United States District Court
Southern District of Texas
**ENTERED**
October 31, 2022
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| BARNEY BEDWELL, § | |
| § | |
| Plaintiff. § | |
| § | |
| V. § | CIVIL ACTION NO. 4:18-cv-04515 |
| § | |
| SCHLUMBERGER GROUP § | |
| WELFARE BENEFITS PLAN, *et al.*, § | |
| § | |
| Defendants. § | |

## MEMORANDUM AND RECOMMENDATION

Plaintiff Barney Bedwell ("Bedwell") has filed a Trial Brief in Support of Judgment on Administrative Record, which I construe as a motion for summary judgment. *See* Dkt. 14. Defendants Schlumberger Group Welfare Benefits Plan ("the Plan") and the Administrative Committee of the Schlumberger Group Welfare Benefits Plan ("Administrative Committee") have filed a response seeking dismissal of the case, which I construe as a cross-motion for summary judgment. *See* Dkt. 19. Bedwell filed a reply. *See* Dkt. 20. Having reviewed the briefing, the record, and the applicable law, I recommend that Bedwell's motion for summary judgment be **DENIED**, the Plan and the Administrative Committee's motion for summary judgment be **GRANTED**, and this case be **DISMISSED**.

## BACKGROUND

This dispute arises from the denial of Bedwell's long-term disability benefits under the Plan. The Plan is governed by the Employee Retirement Income Security Act ("ERISA") and administered by the Administrative Committee. Bedwell argues that the denial of benefits by the Plan's third-party claims administrator was an abuse of discretion because it was not supported by substantial evidence.

Bedwell worked for Schlumberger Technology Corporation ("Schlumberger") as a deckhand, a position that involved cleaning barges, washing dishes, checking engine oil, and other maintenance responsibilities. As an

employee for Schlumberger, Bedwell was eligible to receive benefits from the Plan. Schlumberger funds the Plan and its third-party claims administrator, Life Insurance Company of North America ("the Administrator"), determines, in its sole discretion, whether claims should be paid.

In October 2014, Bedwell fell and injured his shoulder while working on a tugboat. He continued working until January 20, 2015, after which he received short- and long-term disability benefits from the Plan. The Plan requires claimants to show that they continue to meet its definitions of "disabled," which change based on the length of time a claimant has received benefits. Initially, a claimant has to show that he is "unable to perform the normal duties of [his] job due to an accident, illness or injury" to receive long-term disability benefits. Dkt. 18-3 at 83. After receiving disability benefits for two years, a claimant has to show that he is "unable to perform the duties of *any* occupation . . . for which [he is] reasonably suited due to [his] education, training or experience" to continue to receive long-term disability benefits. *Id.* (emphasis added). In June 2016, the Administrator informed Bedwell that his long-term disability benefits would terminate in January 2017 unless he provided updated medical documents that showed he qualified for benefits based on his inability to perform "*any* occupation."

In support of his claim for continuing long-term disability benefits, Bedwell submitted a disability questionnaire that identified Dr. B. Todd Sitzman ("Dr. Sitzman") and Dr. Najeeb Thomas ("Dr. Thomas") as his treating physicians. The Administrator subsequently requested and received medical records from Dr. Sitzman and Dr. Thomas. These records show that Dr. Thomas performed a two-level anterior cervical discectomy on Bedwell on October 28, 2015. Two weeks later, Bedwell admitted himself to an addiction treatment facility because he was abusing pain medication. At a follow-up appointment in November 2016, Dr. Thomas indicated that Bedwell complained of pain in his neck and shoulder blades, which prohibited him from lifting his shoulders more than 90 degrees. After a physical examination, Dr. Thomas concluded that Bedwell was at maximum

2

medical improvement, his strength was "normal," his range of motion was "diminished," and there was "some mild palpable spasm to his neck." Dkt. 18-5 at 37. Based on the submitted records, the November 2016 appointment was the last time that Dr. Thomas treated Bedwell.

Beginning in April 2016, Bedwell visited Dr. Sitzman, a pain specialist. Dr. Sitzman diagnosed Bedwell with chronic pain syndrome and administered steroid injections for his back and shoulder pain. At follow-up appointments, after observing that Bedwell was dependent on opioids and was not responding favorably to various pain medications, Dr. Sitzman prescribed a weekly Butrans patch. A Butrans patch is applied to the shin and delivers an opioid medication to alter the way the central nervous system perceives and reacts to pain. At a July 2016 appointment, Bedwell rated his pain at 10 on a 10-point scale. His pain decreased to six on a 10-point scale by September 2016. In May 2017, at the last appointment before the Administrator made its initial benefits decision, Bedwell complained that his entire spine was stiff. Remarking that Bedwell led "a very sedentary lifestyle," Dr. Sitzman "encouraged him to be more active." *Id.* at 24.

In July 2017, Dr. Shadrach Jones ("Dr. Jones") reviewed the medical records submitted to the Administrator to provide an opinion on Bedwell's work status and level of functional limitation. Dr. Jones determined that Bedwell "may have mild functional limitations due to chronic spinal condition." *Id.* at 31. Given these limitations, Dr. Jones identified the following "medically necessary activity restrictions":

> The customer may frequently sit, reach at desk level, fine manipulate, simple grasp and firm grasp; occasionally stand, walk, and reach above the head and below the waist; and lift, carry, push and pull 10 lbs. on an occasional basis and a negligible amount of weight on a frequent basis. There are no documented impairments of speech, hearing, vision, or cognition.

*Id.*

The Administrator subsequently conducted a transferable skills analysis to determine whether Bedwell could work in another occupation based on his

education, training, and experience. In the analysis, the Administrator noted that Bedwell completed 7th grade and earned a GED. The Administrator identified a surveillance system monitor and a gate guard as occupations available to Bedwell, noting that "[t]hese occupations were identified based on [Bedwell]'s physical limitations and restrictions as outlined by Dr. Jones." Dkt. 18-6 at 6.

Based on the transferable skills analysis and other medical documents, the Administrator denied Bedwell's claim for continued long-term disability benefits. The claim denial letter stated that the Administrator had reviewed the medical records from Bedwell's most recent appointments with Dr. Thomas and Dr. Sitzman, where Bedwell had reported pain but had normal strength and relatively normal range of motion. The Administrator concluded that the occupations identified by the transferable skills analysis were "compatible with [Bedwell's] work capacity." *Id.* at 9.

Dr. Sitzman encouraged Bedwell to appeal this decision, opining that "it will be extremely difficult for Mr. Bedwell to obtain a job [as a surveillance system monitor or gate guard] based on his background as well as his current medication regimen." *Id.* at 46.

Bedwell appealed the decision. The Administrator asked Dr. Sitzman to provide additional medical records. The only new record that the Administrator received from Dr. Sitzman was from an August 2017 appointment, where Dr. Sitzman indicated that Bedwell's "current medication regimen does help, but his pain ranges from a 4 to a 9 depending on the circumstances and time of day." *Id.* In that same medical record, Dr. Sitzman noted that a physical examination revealed a "normal, nonantalgic gait." *Id.* at 47.

Dr. Andrew Seltzer ("Dr. Seltzer") reviewed the medical records for the Administrator and found that although Bedwell was experiencing pain, he had "normal strength and reflexes." *Id.* at 58. Dr. Seltzer noted that he called Dr. Thomas and left a voicemail, but his call was not returned. He also called Dr. Sitzman and spoke to an employee who said Dr. Sitzman had no additional

4

information. Dr. Seltzer concluded that medically necessary activity restrictions were limited to "[o]ccasional tilting/rotating of the neck, occasional bending at the waist, and occasional lifting up to 50 pounds." *Id.* A second transferable skills analysis identified the same two occupations—surveillance system monitor and gate guard—as occupations available to Bedwell.

In November 2017, the Administrator denied Bedwell's claim on appeal. The denial letter noted that "the claim was reviewed in its entirety" and addressed the August 2017 appointment with Dr. Sitzman where Bedwell "continued to experience pain in the entire spine" but was "found to have a normal examination with no[n]antalgic gait." *Id.* at 70. The denial letter further stated as follows:

> The medical records do not support restrictions from Chronic Pain Syndrome and Chronic Axial Neck, mid-back, and low back pain as the physical examinations on file are relatively normal and do not support objective evidence to support your subjective pain complaints. Additionally, [Bedwell's] medications are not noted to cause side effects as the records demonstrate use of a Butrans patch, without indication of functional limitations secondary to this patch or other medications. However, a moderate functional impairment does exist secondary to [Bedwell's] post-laminectomy syndrome as evidenced by reduced range of motion secondary to a history of cervical fusion. The following restrictions and limitations were recommended: occasional tilting/rotating of the neck, occasional bending at the waist, and occasional lifting up to 50 pounds. . . . Since transferable occupations were identified, you would be considered transferable per your Plan.

*Id.*

Bedwell's counsel initiated a voluntary second appeal in February 2018.[1] Roughly nine months later, in late November 2018, Bedwell's counsel submitted additional records to the Administrator and the Administrative Committee, asking

---

[1] If a claim for benefits is denied in whole or in part, the Plan allows a claimant to administratively appeal the determination. To exhaust his mandatory administrative remedies, the claimant must appeal the determination to the Administrator within 180 days. If any part of the claim is denied on appeal, the claimant may make a voluntary second appeal to the Administrative Committee. This second appeal is "entirely optional" and is not required before filing a lawsuit under ERISA. Dkt. 18-10 at 593.

them to "consider [the records] in connection with the denial of benefits" and to make the records "part of the administrative record." Dkt. 18-1 at 16. The next day, Bedwell filed this lawsuit against the Plan, the Administrator, and the Administrative Committee.[2] On January 16, 2019,[3] the Administrative Committee acknowledged that Bedwell's voluntary second appeal was under review. On January 29, 2019, an appeal specialist for the Administrator recommended upholding the denial of benefits decision. The Administrator has not issued a final decision in the voluntary second appeal.

Bedwell has filed a Motion for Summary Judgment against the Plan and the Administrative Committee. The motion argues that I should find, based on the administrative record, that the Administrator abused its discretion when denying the continuation of his benefits. Bedwell also requests an award of attorney's fees, plus interest and costs. In response, the Plan and the Administrative Committee contend that the Administrator made the correct decision, and that Bedwell has failed to meet his burden to show that the Administrator abused its discretion.

## APPLICABLE LAW

**A.  SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact issue is material only "if its resolution could affect the outcome of the action." *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 409 (5th Cir. 2002). "A factual dispute is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989).

---

[2] The Administrator was later dismissed from the suit. *See* Dkt. 9.

[3] Although this date is unclear from the record, both parties indicate that the email acknowledging the voluntary second appeal was sent on this date. *See* Dkt. 19 at 12; Dkt. 20 at 2.

The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once satisfied, the burden shifts to the nonmovant to show the existence of a genuine fact issue for trial. *See id.* at 324. To do so, the "nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim." *Brooks v. Houston Indep. Sch. Dist.*, 86 F. Supp. 3d 577, 584 (S.D. Tex. 2015). In ruling on a motion for summary judgment, I must construe "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Cadena v. El Paso Cnty.*, 946 F.3d 717, 723 (5th Cir. 2020).

**B.    ERISA STANDARD OF REVIEW**

ERISA provides federal courts with jurisdiction to review benefit determinations by administrators. *See* 29 U.S.C. § 1132(a)(1)(B). In this case, because the Plan gives the Administrator discretion to interpret the Plan's terms and determine benefits eligibility, *see* Dkt. 18-10 at 590, I may reverse the Administrator's denial of benefits only if the Administrator abused its discretion. *See Holland v. Int'l Paper Co. Ret. Plan*, 576 F.3d 240, 246 (5th Cir. 2009). An abuse of discretion occurs when an administrator acted arbitrarily or capriciously. *Id.* "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (quoting *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 215 (5th Cir. 1999)) (quotation marks omitted). This review "need not be particularly complex or technical; it need only assure that the administrator's decision fall somewhere on a continuum of reasonableness—even if on the low end." *Id.* at 247 (quoting *Corry v. Liberty Life Assurance Co. of Bos.*, 499 F.3d 389, 398 (5th Cir. 2007)) (quotation marks omitted). If a decision is shown to be both non-arbitrary and supported by substantial evidence, "it must prevail." *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 273 (5th Cir. 2004).

7

## ANALYSIS

Bedwell argues that the Administrator abused its discretion when it denied him benefits under his long-term disability plan because the decision was not supported by substantial evidence. While I view the evidence in the light most favorable to the non-moving party under the summary judgment standard, my review is still limited to the highly deferential abuse of discretion standard applied in ERISA cases. After reviewing the briefing, the record, and the applicable law, I conclude that the Administrator's decision to terminate Bedwell's benefits was not an abuse of discretion.

### A. THE ADMINISTRATIVE RECORD DOES NOT INCLUDE THE DOCUMENTS SUBMITTED AFTER THE DECISION IN THE MANDATORY APPEAL

As a preliminary matter, the parties dispute whether the documents accompanying Bedwell's voluntary appeal should be considered part of the administrative record. As detailed above, Bedwell's counsel submitted the voluntary appeal documents almost one year *after* Bedwell's benefits claim was denied on his mandatory appeal, and only one day before this lawsuit was filed.

Generally, the administrative record "consists of relevant information made available to the administrator prior to the complainant's filing of a lawsuit and in a manner that gives the administrator a fair opportunity to consider it." *Est. of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 215 F.3d 516, 521 (5th Cir. 2000). Bedwell fails to explain how the Administrator could have had a fair opportunity to review the additional documents when they were submitted *after* the decision in his mandatory appeal and only one day before he filed suit.[4] On my

---

[4] Instead, Bedwell diverts my attention to his still-pending voluntary second appeal, arguing that the Administrative Committee's failure to issue a decision within 45 days, as required by the Plan's procedures, was an abuse of discretion. *See* Dkt. 18-10 at 592 ("[The Administrative Committee] must make its decision on your appeal within a reasonable period after receiving your appeal. This cannot be later than 45 days after the appeal was received <u>unless</u> special circumstances require that the deadline for making a decision on the appeal be extended."). Voluntary appeals, however, do not require the same ERISA safeguards as mandatory appeals. *See* 29 C.F.R. § 2560.503–1(c)(3) (describing the claims procedures requirements for voluntary appeals). As such, I hesitate to hold the

review, precedent does not support the supplementation of an administrative record where documents were submitted only one day before filing suit. *See, e.g., Killen v. Reliance Standard Life Ins. Co.*, 776 F.3d 303, 312 (5th Cir. 2015) (declining to supplement the administrative record where evidence was submitted four weeks before filing suit); *Chadbourne v. Marathon Petroleum Co.*, No. 17-cv-00284, 2018 WL 4033776, at *3 (S.D. Tex. Aug. 23, 2018) (denying plaintiff's request to supplement the administrative record because the request, which came 15 days before the plaintiff filed suit, "did not provide the Plan Administrator a fair opportunity to consider" the evidence).

Even if I did consider the additional documents, my conclusion that the Administrator did not abuse its discretion would not change. The additional documents are (1) an affidavit from Bedwell; (2) an affidavit from Bedwell's sister confirming the statements in Bedwell's affidavit; (3) pharmacy records; (4) records from Dr. Sitzman; and (5) records from Dr. Lance Estrada, Bedwell's orthopedic surgeon. Notably, many of the records from Dr. Sitzman are duplicative, and none of the medical records provide recent updates on Bedwell's condition. Moreover, statements in Bedwell's affidavit relating to his inability to perform any occupation are unsupported by his medical records and uncorroborated by any treating physician.

Accordingly, because Bedwell submitted the additional documents after the decision in his mandatory appeal and only one day before he filed suit, I will not consider the additional documents in my review.

---

Plan and the Administrative Committee to this deadline when they are voluntarily doing more than the law requires. *See DaCosta v. Prudential Ins. Co. of Am.*, No. 10-cv-720, 2010 WL 4722393, at *6 (E.D.N.Y. Nov. 12, 2010) ("[I]t makes no sense to discourage ERISA plan providers from offering voluntary appeals, even if those appeals lack ERISA safeguards.").

### B. THE ADMINISTRATOR DID NOT ABUSE ITS DISCRETION BECAUSE ITS DENIAL WAS REASONABLE AND SUPPORTED BY SUBSTANTIAL EVIDENCE

Bedwell claims that the Administrator abused its discretion by (1) failing to conduct an independent medical examination; (2) relying on the opinions of its reviewing physicians instead of his complaints about his pain; and (3) arbitrarily refusing to consider Dr. Sitzman's opinion that it would be extremely difficult for him to perform the jobs of a surveillance system monitor or a gate guard. He argues that these actions led to unreasonable denials that were unsupported by substantial evidence. Specifically, he claims that the denials "lack[ed] adequate bases and [were] wracked with factual error, omission, illogical deductions and nonsensical advocacy for the Plan's cause." Dkt. 14 at 20.

I first want to emphasize that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Killen*, 776 F.3d at 307 (quotation omitted). As a result, the question before me is not whether I think the Administrator should have decided differently. Rather, the question I must answer is whether substantial evidence supports the Administrator's decision. For the reasons explained below, I find that the Administrator did not abuse its discretion.

At the outset, I note that ERISA does not require reviewing physicians to conduct an independent medical examination before denying benefits. *Id.* at 308 n.3. "Instead, a decision may be supported by substantial evidence where it is based on medical opinions formed after reviewing all the medical evidence offered by a claimant." *Schiro v. Office Depot, Inc.*, 634 F. App'x 965, 969 (5th Cir. 2015). The Fifth Circuit has observed that when it finds an abuse of discretion, "the discrepancies between the facts and the administrator's findings are often stark." *Killen*, 776 F.3d at 308.

In *Lain v. UNUM Life Insurance Co. of America*, 279 F.3d 337 (5th Cir. 2002), the Fifth Circuit found a stark discrepancy between the facts and an administrator's findings. There, an administrator denied benefits to a claimant

10

experiencing severe chest pains that were documented and treated by several physicians. *See id.* at 340–41. The Fifth Circuit held that the administrator abused its discretion because there was a "complete absence in the record of any 'concrete evidence' supporting" the administrator's determination that the claimant was not disabled. *Id.* at 347. The Fifth Circuit explained that the administrator made unfair deductions, unreasonably relied on certain statements while ignoring the facts in context, and focused on test results rather than the claimant's pain and its effect. *See id.* at 346–47.

Here, I find no such stark discrepancies between Bedwell's medical records and the Administrator's findings. The Administrator's reviewing physicians—Dr. Jones and Dr. Seltzer—stated that they examined all of the available evidence before concluding that Bedwell could perform various tasks with mild functional limitations. Specifically, the first reviewing physician, Dr. Jones, noted that Bedwell's treating physicians documented that his strength was normal and he was in "no apparent distress." Dkt. 18-5 at 30. Based on this information, Dr. Jones concluded that Bedwell could "frequently sit, reach at desk level, fine manipulate, simple grasp and firm grasp; occasionally stand, walk, and reach above the head and below the waist; and lift, carry, push and pull 10 lbs. on an occasional basis and a negligible amount of weight on a frequent basis." *Id.* at 31. The second reviewing physician, Dr. Seltzer, stated that he disagreed with Dr. Sitzman's opinion that Bedwell would have difficulty being a surveillance system monitor or a gate guard for two reasons. First, a medical record from September 6, 2016 stated that while Bedwell reported neck pain and a decreased range of motion in his neck, there was "no real shooting pain down his arms" and he had "normal strength and reflexes." Dkt. 18-6 at 58. Second, a medical record from August 8, 2017 explained that Bedwell continued to experience pain in his spine but he had a "normal no[n]antalgic gait," "no focal upper extremity strength deficits," and "no focal upper extremity motor or sensory deficits." *Id.* Based on this medical information, Dr. Seltzer concluded that Bedwell's conditions supported "limitations pertaining

to range of motion and lifting heavy weight." *Id.* Following the medical opinions of its reviewing physicians, the Administrator concluded that Bedwell was not disabled.

As the Fifth Circuit has noted, "[c]ourts frequently hear cases . . . where the plaintiff's own treating physicians generally support a finding of disability and the defendant's vocational specialists and independent medical examiners disagree." *Killen*, 776 F.3d at 308. When this occurs, "it is the role of the ERISA administrator, not the reviewing court, to weigh valid medical opinions." *Id.* at 309.

I believe that the Administrator properly weighed the differing opinions of its reviewing physicians and Bedwell's treating physicians. It is worth noting that Dr. Sitzman did not go so far to say that Bedwell is unable to perform any occupation. Instead, his statement that it would "be extremely difficult for Mr. Bedwell to obtain a job [as a surveillance system monitor or a gate guard] based on his background as well as his current medication regimen" (Dkt. 18-6 at 46) is less definitive than in other cases where treating physicians opined on total disability. *See, e.g., Killen*, 776 F.3d at 306 (noting that the plaintiff's treating physician wrote a letter stating that he believed the plaintiff was "unable to work due to her medical issues"). I recognize that this distinction is subtle. But subtleties matter when my task is to apply the highly deferential abuse of discretion standard.

I also cannot lend credence to Bedwell's argument that the Administrator "arbitrarily refuse[d] to credit the opinion of [Dr. Sitzman]." Dkt. 14 at 19. "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Killen*, 776 F.3d at 308 n.2 (quotation omitted). Again, this reflects the highly deferential abuse of discretion standard that I am required to apply in this case. *See Schiro*, 634 F. App'x at 970 ("Under proper abuse-of-discretion review in the ERISA context, [the

12

administrator] was not required to explain why it credited its internal opinions over those of the treating physicians, nor was [the administrator]'s evidence less substantial in light of conflicting opinions offered by the treating physicians.").

Here, the Administrator found that Dr. Sitzman's opinion, considered with the rest of the evidence, did not support a finding of total disability. I cannot require the Administrator to give special weight to Dr. Sitzman's opinion. Notably, Dr. Sitzman's statement that it would be extremely difficult for Bedwell to perform the occupations identified for him conflicts with other statements by Dr. Sitzman. For example, in May 2017 Dr. Sitzman encouraged Bedwell to lead a more active lifestyle. *See* Dkt. 18-5 at 24 ("He leads a very sedentary lifestyle. I have encouraged him to be more active."). In August 2017, Dr. Sitzman noted that Bedwell's pain "increase[s] with activity, prolonged standing, lifting, and repetitive motions." Dkt. 18-6 at 46. Taken together, these statements support a finding that it is in Bedwell's interest to perform a sedentary occupation—one that requires some, but not too much, movement. Therefore, I cannot say that it was unreasonable for the Administrator to conclude that Bedwell was not disabled.

## CONCLUSION

For the reasons explained above, I recommend that Bedwell's motion for summary judgment (Dkt. 14) be **DENIED**, the Plan and the Administrative Committee's motion for summary judgment (Dkt. 19) be **GRANTED**,[5] and this case be **DISMISSED**.

---

[5] I do not, however, believe that attorney's fees should be awarded to the Plan and the Administrative Committee. As an afterthought in the conclusion to their cross-motion for summary judgment, the Plan and the Administrative Committee request attorney's fees under 29 U.S.C. § 1132. *See* Dkt. 19 at 29. This section provides that a "court in its discretion may allow a reasonable attorney's fee and cost of action to either party." 29 U.S.C. § 1132(g)(1). When determining whether to award attorney's fees under 29 U.S.C. § 1132(g), a district court is required to consider five factors: "(1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the

The Clerk shall provide copies of this Memorandum and Recommendation to the respective parties who have 14 days from receipt to file written objections under Federal Rule of Civil Procedure 72(b) and General Order 2002–13. Failure to file written objections within the time period mentioned shall bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.

SIGNED this 31st day of October 2022.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

---

relative merits of the parties' positions." *Iron Workers Loc. No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980). Although I conclude that Bedwell should not prevail in this action, his appeal was neither meritless nor made in bad faith.

More problematically for the Plan and the Administrative Committee's request, however, is their complete lack of explanation for *why* they should receive attorney's fees. This is reason alone to deny their request. *See Menchaca v. CNA Grp. Life Assurance Co.*, No. 07-cv-0825, 2008 WL 11454762, at *14 (S.D. Tex. Aug. 15, 2008) ("Although defendants have included a request for attorney's fees in their briefing, they have not included an analysis of factors that courts use to decide whether such fees should be awarded. Accordingly, defendants' request for attorney's fees will be denied."). Accordingly, I recommend that the Plan and the Administrative Committee's request for attorney's fees be **DENIED**.